## JOHN T. FAULK v. KIZIAH FAULK AND OTHERS.

It is not a valid objection to a petition, that parties claiming different interests, the one a life estate, and the other an unqualified title in fee simple, assert their respective interests in the same action.

Where the rights of infants require protection against the misconduct of their father, the authority of the court may be invoked against him, as against a stranger.

See this case, for circumstances under which the court, for the protection of children possessing property, exercised its authority against the father's control of it, in order to preserve the rights of the minors; and also for the frame of a petition, which presented a case entitling the minors to the interposition of the court, in their behalf.

An instrument of writing, addressed to a third party, signed by the writer, and the party to whom it is addressed, reciting that the maker thereof had placed in the possession of the other, his wife and children, and certain slaves and other property, specified and described, and that he confided his wife and her children, " *and her property*," to his care, does not of itself vest in the wife a life-estate in the property with remainder to the children ; nor does it operate to transfer the title to the property, by gift, from the father to the wife and children.

Under an allegation in the pleadings, that such gift for life, with remainder, was made verbally before the execution of the instrument, the question, whether there is evidence of such a gift, is one for the decision of the jury.

An instrument conveying property, which, by its terms, was designed to operate in the lifetime of the donor, and was effectuated as a gift, by delivery, is properly construed to be a gift, though inartificially drawn, and containing expressions which would be more appropriate in a will, than in a deed, and possessing some of the characteristics of a will.

No question can arise, as to the effect of such an instrument under the law of another state, in which it was executed, where there is no averment or proof respecting the law of that state.

In a suit between minor children and their father, brought by the former to recover property alleged to have been given to them by the latter, if it appear that the father is competent to take care of his children, and their property, and to raise his said children, the recovery of the title and right to the property, by the plaintiffs, will not divest the parent of the custody and education of the children, and the management of their property.

Where special issues have been submitted to a jury, and they have failed to agree upon one of them, and the parties, by consent, withdraw from the jury, the issue in question; if it appear that it was not thereby intended that a mis-trial should be had, such withdrawal is to be deemed a waiver

of the jury trial, in the decision of that issue, and a tacit consent that it be decided by the court.

It is only on the application of a party, that the court is required to empanel a jury, in causes of equitable cognizance; and it is not necessary, as in cases of legal cognizance, that the parties should waive a jury.

ERROR from Henderson. Tried below before the Hon. John H. Reagan.

Suit was commenced on the 6th day of June, 1856, by Kiziah Faulk, one of the defendants in error, against John T. Faulk, the plaintiff in error, for a divorce, alleging, in her petition, that the defendant was a resident citizen of the county of Henderson, state of Texas; that they had, as the offspring of their marriage, three children, to wit, Jonathan James, Alfred Andrew, and Nancy John Faulk, who were minors of tender years, and who owned certain property, consisting of negroes, mules and horses, (and described particularly in the petition,) which the plaintiff alleged was conveyed to them by deed of gift, from the defendant, on the 3d day of August, 1855, filed with the petition as an exhibit, as follows:

"*State of Louisiana, Parish of Ouachita.* Now, be it known to whom it may concern, and particularly I notify my children, my five oldest ones, David, Hannibal, Phebe, John and Robert, I do this day bestow on my three younger children, Jonathan James, Alfred Andrew, and Nancy John, all of my property that is now in Texas, with the three last named children in Texas, described as follows: two negro men, Herrod and Abram, each about 24 years old, a woman, Louisa, about 32 years old, and her six children, two of them boys, Jesse and Green, and four girls, Hester, Flora, Texas, ——. The oldest of Louisa's children, twelve years old, the youngest two years; and one other girl, Harriet, twelve years old; ten in number, worth six thousand dollars, which sum is, two thousand dollars for each of the children; I do hereby donate the same to those three last named children, for their support and education; I do hereby warrant and defend the same to them for their own proper use, benefit

and behoof, forever. And when the first living one comes to mature age of twenty-one, then the property, original, with the increase, must be divided, and the mature aged one, must have its equal and rightful portion; and if one of the three children dies before arriving to maturity, the two living ones shall be the heirs, and if two of them dies before arriving to maturity, then the living one shall heir all of the original, and the increase of this donated property; and my wife, the mother of Jonathan James, and Alfred Andrew, and Nancy John, I hereby appoint her, with her brother William, to be the guardian to the said children, in case of my death before their death.

"JOHN T. FAULK."

"JOHN THOMPSON,
"T. D. KINGSBURY,
"HARRIETT A. WIMBERLY,
"SAMUEL W. COLLINS,
"W. F. HATCHETT."

"The following lines I make a codicil to the former gift; I decree that my wife, Kiziah Faulk, shall have awarded her, out of my property, $2000 after my death, if she survives me; this donation of $2000 is to be made out of my property that is now in Louisiana.

"Attest my hand this 30th of August, 1855.

"J. T. FAULK."

"Codicil continued. In addition to the above-named negro property in Texas, now in the care of my wife Kiziah, and her brother William H. Faulk, there is four mules and one mare and colt, and one gray stud horse, the same is all for my wife and her children, Jonathan James, and Alfred Andrew and Nancy John.

"Attest my hand,                                "JOHN T. FAULK."

"T. D. KINGSBURY,
"W. F. HATCHETT,
"SAMUEL COLLINS."

This instrument was duly authenticated, and recorded in the office of the county clerk of Henderson county.

The petition alleged, that the defendant was advanced to a great age, to wit, seventy years, and that he was incompetent to raise and educate the said children; that he had got possession of the property above described, and declared that he intended to retake the same to himself again, and remove it beyond the limits of the state of Texas, without leaving the aforesaid children, anything for their education or support. The plaintiff alleged, that they were married in the year 1850, and that in consequence of the ill treatment of the defendant, she removed to the state of Texas in the year 1854; that the defendant followed her in the year 1856, and came to her house, and resumed his former course of ill treatment. The premises considered, she prayed for a divorce, for a writ of sequestration to seize and take the said property, and a decree, vesting the title thereto in the said minor children.

The plaintiff made an affidavit, and gave bond for the sequestration; the writ was issued on the 7th day of June, 1856, and executed on the tenth day of the same month, by the seizure of the property. Replevy bond was given by the plaintiff, in July, 1856, and the property delivered to her. The defendant demurred to the petition, and filed a motion to quash the sequestration.

The plaintiff then amended her original petition, and alleged, that when she left the home of the defendant, in the state of Louisiana, to come to Texas, she did so, with the approval of her husband, who delivered the property therein named, to her brother, William H. Faulk, to convey the same with petitioner, to the state of Texas, for the use of plaintiff and the said children. The plaintiff further alleged, that her said brother, under the direction of the defendant, provided her a home, and placed the said slaves, and the other property, in the possession of the children and the petitioner. That in the summer of the year 1855, at the request of the defendant, she visited him in Louisiana, where he made and delivered to her the deed heretofore recited; and procured one of the witnesses thereto, to accompany the petitioner home in Texas, for the purpose of authenticating the same for record,

and to have the same recorded in the county clerk's office in Henderson county; all of which was accordingly done, in the month of September, 1855. That the defendant left the state of Texas in June, 1856, and returned to his home in the state of Louisiana; and had no intention of returning to this state.

On the 7th day of November, 1856, the sequestration in this cause was dismissed, and a judgment was rendered against the plaintiff, Kisiah Faulk, and the securities on her bond, for the sum of $6000, to be satisfied by the delivery of the negroes sequestrated to the defendant, John T. Faulk.

On the 10th day of November, 1856, the said minor children, by their next friend, William H. Faulk, filed a petition to enjoin the judgment above recited; their petition gave a history of the difficulties between their father and mother, as hereinbefore stated, together with the statement as given, as to the suit brought by their mother for divorce, and the judgment against their mother and her securities. They alleged, that the said slaves belonged to them, by virtue of the said gift; that when their father visited this state, he threatened that he would take the negroes away from them, and carry them back to the state of Louisiana, and would deprive them of the said property, and all means of support. That they, (petitioners,) had no other property than that in the said deed recited, (a portion of which, had been carried back to the state of Louisiana, by their said father, and a portion thereof was dead.) That their mother was in indigent circumstances, and unable to support and educate the complainants, without the said negro property. That their father placed them in this state, with their said mother; that he was old and infirm, and would probably never remove, or visit this state again; that he had, as they were informed and believed, an agent in this state, to recover the said slaves; and when the judgment should be executed, their said father would remove the said slaves to the state of Louisiana, and thus deprive them of the means of support. They prayed, that the said John T. Faulk, might be perpetually enjoined from executing the judg-

ment aforesaid, except as to the costs and damages; or from molesting the said complainants, in the enjoyment of the said property, and that their mother might be continued in the possession thereof.    The injunction was granted.

On the 5th day of May, 1857, Kiziah Faulk filed her petition, alleging the existence and pendency of the suit, brought by the said minors against John T. Faulk, for the injunction aforesaid, and for the title to the said property, and that she had a life estate in the negro property, mentioned in the petition of the said minors.    That her said estate, was created by an instrument of writing, from John T. Faulk, executed in the state of Louisiana, but made with the intention of being executed and carried out in Texas, and which ought to be construed, according to the laws of the latter state.    She prayed, that the said slaves, and the said minors, might remain in her possession, and that she might be permitted to become a co-plaintiff with the said minors, and prosecute their rights together jointly.    The instrument of writing, referred to in the foregoing petition, is as follows:

"Ouachita, Louisiana, August 22d, 1854.

"Respectfully to William Faulk:—William, you have in your charge, my wife, Kiziah, and your own sister, and her three children, James, Alfred and Nancy; take them carefully to Texas, to your place. You have in your care, ten slaves,—two men, and one woman, Louisa, and her six children, and girl Harriett; you have one wagon and four mules, and one mare; the beds and furniture for blacks and whites.    William, I have in you a great confidence.    I confide my wife and her children to your care, and her property; I wish you to do for her all you can to make her happy.    Take care of the children, and bring them up in a proper manner.    Take care of the slaves, and see to their welfare.    The other property, do with and for, in a proper way.

"J. T. FAULK,
"Attest:                                "W. H. FAULK."
    "SEABORN F. TINDEL,
    "J. A TINDEL."

Faulk v. Faulk.

The plaintiff, Kiziah Faulk, on the 7th of May, 1857, dismissed her petition, so far as it asked for a divorce, before the trial of the cause.

The defendant, John T. Faulk, filed demurrers to the petitions of the said minors, and of the said Kiziah; and for special ground of exception, assigned the following: "That the petitions and exhibits do not disclose any present cause of action; nor any reason for the interposition of the court."

The plaintiff, Kiziah, on the 8th day of May, 1857, amended her petition last filed, and alleged, that in the early part of August, in the year 1854, and before the 22d day of that month, the said John T. Faulk, at his residence, in the state of Louisiana, gave to her, for and during her natural life, the negro slaves mentioned in her bill, and the remainder to said minor children; and that he accompanied the said gift, by actual manual delivery of the property; that the said gift of a life estate to her was a verbal gift, by the terms of which, the life estate, and that in remainder, were to be jointly possessed and enjoyed by her and the said children, in the state of Texas, where the said John T. Faulk was about to send them and the said petitioner, with the property.

In the case of William H. Faulk, next friend of the minors, against John T. Faulk, it was agreed by the parties to all the suits hereinbefore recited and referred to, that the suits in which any of them were concerned against the defendant, John T. Faulk, should be submitted to the court and jury at the same time and together, which was accordingly done; and the exceptions of the defendant to the amended petitions, were overruled by the court.

The court submitted to the jury, the following special issues, for their finding, which they found, as stated in the answers subjoined thereto.

1st. "Does the proof show, that John T. Faulk gave a life estate in the property in controversy, to his wife, Kiziah Faulk, with a title in remainder to his three infant children, to said property after her death?"

Answer.—" It does not."

2d. " Does the proof show, that John T. Faulk, gave the negroes in controversy, to his three infant children in full title ?"

Answer.—" It does."

3d. " Does the proof show, that he gave the other property in controversy, to his wife and children, in full title, for their common benefit ?"

Answer.—" It does."

4th. " Does the proof show, that John T. Faulk, is incompetent to take care of his children and their property, and to raise his said children ?"

Answer.—" It does not."

5th. " Does the proof show, that the said John T. Faulk, intended and attempted, as charged in the pleadings, to take the property mentioned, out of the state of Texas, and to leave his said wife, and the said minor children in this state, destitute of support ?"

The jury failing to agree upon this last issue, the same was withdrawn, by consent, from their consideration.

The court charged the jury as follows : " Under the first issue submitted, you are to determine whether the defendant, John T. Faulk, gave the property in controversy, to his wife, Kiziah Faulk, for her life, and after her death, to their three minor children. The plaintiffs rely on the evidence of the expression and objects of the defendant, when preparing to send his wife and children, and the property which accompanied them, to Texas, in the care of William H. Faulk, on the writing addressed to William Faulk, dated August 22d, 1854, and on his supposed subsequent recognition of their rights to the property. You are to consider whether the evidence of the acts and expressions of John T. Faulk, previous to the 22d of August, 1854, show that he gave this property to his wife and children, for their sole and separate use.

" A gift of his property could have been made effectual to them, by a delivery of the property to them, or to some one for them, for their separate and sole use, and with directions from the de-

fendant, that they were to be settled with this property in this state.

"The paper above referred to, dated the 22d of August, 1854, does not confer the title to the property in controversy upon the wife and children, or either of them, nor does it of itself, divest the title of this property out of John T. Faulk. Does the other evidence show a gift of this property, before the date of this instrument, by the defendant, to his wife and children? Nor does it show that it was his object to secure the use of this property to his wife and children in this state, without intending to divest the title out of himself.

"If you believe the plaintiff gave this property in full title, to his wife and children, a life estate to his wife, with remainder to his children, you should respond affirmatively to the first issue.

"If you find the affirmative of the first issue, you need not consider the second issue; but if you find the negative of the first issue, you will then proceed to inquire, under the second issue, whether the defendant gave the negroes in full title, to his then minor children. The instrument offered in evidence, signed by the defendant, and witnessed by John Thompson, and a number of others, as witnesses, and purporting to give these negroes to his three children, is a binding, effectual deed of gift from him to his children, if he had not previously given his wife a life estate in the negroes. This paper might not be a valid deed under the laws of Louisiana, but being executed for the benefit of his children, then in Texas, it is valid, under the laws of Texas; and if you find the negative of the first issue, this instrument will authorize you to find the affirmative of the second issue. The second clause in the above-named paper, purporting to be a codicil, is of no valid effect for the purpose of conveying any right to the wife, and need not be considered by you. The third clause in said paper, purporting to be a continuance, in connexion with the first clause, amounts to a gift of the property described in it, to his said wife and children, and will authorize you to respond affirmatively to the third issue.

"You will then respond as you may feel authorized by the

proof, to the fourth issue. You will then inquire, under the fifth issue, (if you should conclude that the title to the property is in the wife and children, or in the children alone,) whether the defendant attempted to deprive them of the use of this property, and leave them destitute in Texas. If the proof shows, that he wished and intended, that his wife and children should remain here, and he in Louisiana, and that his object is, to take the property away from them, and leave them destitute here, you should find the affirmative of the fifth issue. But if the proof shows, that he wishes his wife and children to live with him, either in Louisiana or here ; and if the proof shows, that he is actuated by motives of affection, kindness and duty, as a husband and father, you should find the negative of the fifth issue." The court also charged the jury, that "if the defendant made any gift of the slaves, or other effects, in prospect of death, such gift would only be binding in the event of his death."

The court rendered judgment on the finding of the jury, on the petitions of the said Kiziah Faulk, and William H. Faulk, as the next friend of the minor children, against the defendant, John T. Faulk, dissolving the injunction theretofore granted ; and adjudged and decreed that John T. Faulk be allowed to enforce the judgment which had been rendered in his favor, at the previous term of the court, against the said Kiziah ; and also, that the injunction granted to the said W. H. Faulk, as next friend, &c., be dissolved, and judgment rendered against him and his securities, as well as against the said Kiziah, in favor of the defendant, for the delivery of the said property, or the value thereof, in default of its delivery ; and ordering the sheriff to take said property, and deliver the same to the defendant. It was further decreed, that the right and title to said property, for life, or otherwise, was not in the said Kiziah Faulk, and that the right and title to the said negroes be, and the same was, vested in the said infants, Jonathan James, Alfred Andrew, and Nancy John Faulk ; and that the balance of the said property, not to include the slaves, was in the said Kiziah, and the said infants.

The court adjudged further, that the defendant have the management and control of the said slaves, and other effects, and the custody and education of the said infants; and that the said defendant, being a citizen of the state of Louisiana, and it appearing to the court, that he was about to remove the said slaves from this state to the state of Louisiana, and leave the said children and his wife in this state, in a destitute condition, when the restraining order was issued, it was decreed, that the foregoing decree be so far modified, as to perpetuate the above-named injunction, until the defendant should enter into bond with good and sufficient security, to be approved of by the district clerk, in a sum double the value of the negro property; conditioned that he would apply the said property to the maintenance, use and support of the minor children; which being complied with, it was ordered that the injunction be dissolved, and that a writ issue to the sheriff to put the defendant in possession.

The plaintiffs filed a motion for a new trial, which was overruled. The defendant assigned as error: 1st. That the court erred in overruling defendants' exceptions to the plaintiffs' original and amended petitions. 2d. The court erred in its construction of the instrument purporting to be a deed of gift, and other titles, under which the plaintiffs claimed. 3d. The court erred, in its instructions given to the jury, and for refusing to give those asked for by the defendant. 4th. The decree does not conform to the finding of the jury. 5th. That the defendant was required to give the bond required by the decree.

*Chilton & Warren* and *R. F. Dunn*, for the plaintiff in error.

*T. J. Word*, for the defendants in error.

WHEELER, C. J.—We are of opinion, that the court did not err in overruling the exceptions to the petition. It is not a valid objection to the petition, that the parties, claiming different interests, have asserted their respective interests in the same action.

It is admitted to be always a delicate thing, for the court to interfere against the paternal authority. Yet, it is a well established doctrine, that it may do so, when it becomes necessary for the safety and protection of the infant. Therefore, where the children have property, which can give the court the means of acting in their behalf, and where it is required for the preservation of their rights, the authority of the court may be invoked for their protection, as well against the misconduct of their father, or legal guardian, as against a stranger. (Helms v. Franciscus, 2 Bland, 563; Id. 429; Byrne v. Love, 14 Texas Rep. 91; 1 Bouv. Inst. 136.) We think the allegations of the petition presented a case which entitled the plaintiffs to the interposition of the court in their behalf.

The court did not err in holding, that the writing of the 22d of August, 1854, did not, of itself, vest in Mrs. Faulk, a life estate in the property therein mentioned, with remainder to the children, nor did it operate a transfer of the title to the property by gift, from the father to the wife and children. Whether there was evidence of such gift, was properly left by the court to the decision of the jury; and we cannot say that their verdict was contrary to the evidence.

Nor did the court err in the construction of the instrument of writing of the 30th of August, 1855. Though inartificially drawn, and containing expressions which would be more appropriate in a will than in a deed, and some of the characteristics of a will, still, it evidently was intended to take effect presently; in the life-time of the donor. This is evidenced by such expressions occurring in the instrument as, "I do this day bestow," "I hereby donate," "I do hereby warrant and defend," &c. It was manifestly designed to operate in the donor's life-time; and was effectuated as a gift, by delivery. It is, therefore, we think, to be construed to be an act of gift, rather than a will, in which the disposition of the property is designed to take effect after the death of the maker, and it consequently operated a present transfer of property, and is a complete title by gift. No question can arise upon the record, as to the effect of the in-

strument, by the law of Louisiana; for the reason that there is no averment or proof, respecting the law of that state. The court, therefore, rightly adjudged the property in question to the plaintiffs.

The court, moreover, upon the finding of the jury upon the fourth issue, very properly adjudged that the father was entitled to the custody and education of the children, and the management of their property. But it may be a question, whether it was proper for the court to require the father, before taking possession of it, to give bond for its proper management, upon the evidence in support of the affirmative of the fifth issue, without a finding for the plaintiffs upon that issue. It is, however, to be observed, that while the right of trial by jury is secured in cases of equitable cognizance, to enable the court to decide upon the fact, it is not necessary, as in cases of legal cognizance, that the parties should waive a jury. The language of the Constitution is, that "In the trial of all causes in equity in the District Court, the plaintiff or defendant shall, upon application made in open court, have the right of trial by jury," &c. It is only upon the application of a party, that the court is required to empanel a jury, in cases of equitable cognizance. Here the parties, by consent, withdrew from the jury the issue in question; and as they do not appear to have intended that the withdrawal should operate a mis-trial, we think it may be deemed a waiver of the jury-trial in the decision of that issue, and a tacit consent that it be decided by the court. In general, where a jury is empanelled, it will be taken to have been at the instance of the parties, and the verdict must constitute the basis of the decree or judgment. (Claiborne v. Tanner, 18 Texas Rep. 68.) But where one of several issues is thus withdrawn from the jury, by consent, and the case is not withdrawn from them, but they are suffered to return a verdict upon other issues without objection, we think it fair to conclude, that it was intended to refer to the decision of the court, the issue thus withdrawn from the jury. That it was so understood by the parties in this case, is further inferable from the fact, that the action of

43

the court, in proceeding to decide upon the question of fact, was not made the ground of a motion for a new trial, nor has it been assigned as error. We conclude that the court did not err in proceeding to decide the issue, and are of opinion that the decision was warranted by the evidence, and that there is no error in the judgment.

It seems not improbable that it may become the duty of the Probate Court to appoint a guardian for these children, for the preservation of their property. (Byrne v. Love, 14 Texas Rep. 96.) And should it become necessary that the authority of the court be again invoked for that purpose, the decision of this case will not conclude or embarrass any proceeding which may become necessary in their behalf. We only decide that, upon the case as presented by this record, there is no error in the judgment.

Judgment affirmed.

NOTE.—The transcript of the record does not preserve the identity of the two suits of Kiziah Faulk v. John T. Faulk, and W. H. Faulk, as next friend, &c., v. Same, otherwise than by the agreement of counsel, respecting the trial, referred to in our statement of the case. But it inferentially appears, that the suit brought by W. H. Faulk, next friend, &c., in which Kiziah Faulk joined, is the case that is before the court; and that the suit first brought by the said Kiziah for divorce, was one of a different number, and another case, although included in the transcript. The record is confused, and the agreement of counsel has supplied many important and vital omissions.—REPORTERS.